GRATZ (COHEN v.). See Case No. 2,963.
GRATZ (PREVOST v.). See Cases Nos. 11,-406 and 11,407.

## Case No. 5,708.

### GRAU v. McVICKER.

[8 Biss. 13.][1]

Circuit Court, N. D. Illinois. May, 1874.

LEASE—PRINCIPAL AND AGENT—EXECUTORY CONTRACTS—NOTICE OF RENUNCIATION—PREMATURE SUIT—BREACH OF CONTRACT — SET-OFF—MEASURE OF DAMAGES.

1. In a lease of a theater, the lessee was described as "M. G., representing Messrs. C. A. C. & Co., manager of the Opera Company," and the lease was signed by "M. G. representing C. A. C. & Co." One clause of the lease was: "The said M. G. agrees to pay," etc.: *Held*, that M. G. was liable as principal, and that the words added to his name were simply words of description.

2. Where one makes a contract to be performed in the future, and before the time for performance has arrived, notifies the other party that he will not comply with its terms, this may be treated as an immediate breach of the contract, and suit commenced before the time for performance has arrived is not prematurely brought.

[Cited in Sullivan v. McMillan (Fla.) 8 South. 457.]

3. A declaration that a party will not perform an act in the future, may be treated as a breach of a promise to perform such act.

4. A. agreed to rent B.'s theater for two weeks from the 9th of February. On the 9th of January he informed B. of his intention not to take or occupy the theater according to agreement: *Held*, that B. might treat this notice as a breach of the contract, and that the amount of the rental under the contract would be a valid set-off in an action commenced by A. against B. on the 13th of January.

5. It seems, that where a contract is broken, by a notice of renunciation, prior to the time for its performance, the damages are such as would have arisen from the non-performance of the contract at the appointed time, subject to abatement in respect to any circumstances that may afford the means of mitigating the loss.

This was an action of assumpsit [by Maurice Grau against James H. McVicker]. Defendant pleaded in defense a breach of lease and amount due thereon as a set-off. Demurrer to the plea.

Hunter & Page, for plaintiff.
Clarkson & Van Schaack, for defendant.

DRUMMOND, Circuit Judge. The questions involved in this case are of much interest and rather peculiar. The facts seem to be substantially these: That the defendant having in his possession some funds belonging to the plaintiff, was sued by him in an action of assumpsit to recover the amount, and to the declaration filed in the case the defendant alleged as a defense a contract made between him and the plaintiff on the 27th day of June, 1873, by which the plaintiff "representing" (as is interpolated in the original contract) "Messrs. C. A. Chizzola and Company," agreed to rent defendant's theater for two weeks from the 9th of February, 1874, for the Aimée Opera Bouffe Company. By the terms of the lease, the

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

theater was rented to "the said Grau" and "the said Maurice Grau" agreed to pay $2,500 a week and the further sum of twenty per cent. of the gross receipts after deducting this $2,500 per week. The $2,500 was to be paid in daily installments of $500 until $5,000 was paid. The twenty per cent. of the gross receipts was to be paid at the end of the engagement. The defendant relies upon the violation of this contract on the part of the plaintiff as a defense to the action.

The peculiarity of the case arises out of the fact that the lease was not to commence until the 9th of February, and this action was instituted by Grau against McVicker on the 13th of January. If, then, the defendant is entitled to the set-off he claims, it is upon the ground that there was a right of action on his part against Grau in consequence of the refusal of Grau to comply with his contract by giving notice to McVicker to that effect before the time when the lease was to operate had arrived.

These being the facts in the case, there are two points made on the demurrer filed to the plea of the defendant. The first is, that Grau was not personally bound by the contract of the 27th of June, 1873, but that he was the agent of other parties, who are themselves liable. I think this position is untenable under the terms of the contract. The only circumstances which show that Grau was an agent, are that it is stated he represents C. A. Chizzola and Company, and when he signs his name, he signs it: "Maurice Grau, representing C. A. Chizzola and Company." But it will be observed that the contract is made with Grau personally. He is the "manager," so named in the contract, for the Aimée Opera Troupe. The language of the contract is, "Maurice Grau, representing Messrs C. A. Chizzola and Company, manager of the Aimée Opera Bouffe Company;" and the contract states that he, Grau, is to have the privilege of giving a certain number of performances each week, and the contract shows that Grau was himself personally bound by its terms. "The said Maurice Grau, in consideration of the above, agrees to pay to the said McVicker. or his representatives. the sum of $2500," etc. So that, while he represents certain persons, and is a manager of a particular company, the theater is rented to him and he, personally, is to have the privilege of giving performances, and is to pay the various sums of money. Then the words added to the name of Grau in the contract, and also to his signature, indicate nothing more than a description of the person himself, and do not show that these were principals in the agreement, but that Grau himself was the principal with whom McVicker made the contract, and to whom, if it was violated on Grau's part, McVicker could look for the damages growing out of its non-fulfillment.

The second objection as already suggested, that inasmuch as this suit was commenced on the 13th of January, 1874, there was no complete liability on the part of Grau at that time by which McVicker could hold him responsible under the lease, conceding that he had given notice to McVicker before, that he would not comply with its terms, as it was not to begin until the 9th of February, and there was an opportunity for him to retract, or as it is called in the books, a locus poenitentiae. Some authorities declare that in law there is this locus poenitentiae, and that a party shall have a chance to recant and say, "I was wrong, but when the time comes I will perform my contract."

Undoubtedly there are authorities which declare that there can not be a breach of contract strictly so-called until the time has arrived when its performance was to commence; and so in this case, there could be no breach of this contract until after the 9th of February, 1874, because that was the date of the commencement of the contract. There are other authorities, however, which hold the contrary; and in the conflict of authority upon the subject, the question is, what is the true rule in cases of this kind? And the chief importance, perhaps, of this case is that it becomes necessary to determine in the midst of the conflict of authority upon this subject, whether in point of fact, there could be a breach of this contract, properly so-called, so as to entitle McVicker to commence an action against Grau prior to the 9th of February, 1874; and I have come to the conclusion that there may be such breach.

I think that the principles decided in the case of Hochster v. De Latour, reported in 20 Eng. Law & Eq. 157, are sound. That was a case where two parties made an agreement with each other by which one was to enter the employment of the other and to perform a contract which was to commence on a day named. The plaintiff in the action agreed to be a courier of the defendant, on the continent of Europe, for a time, commencing on the first of June. Before that time arrived the defendant had notified the plaintiff that he would not perform the contract, in other words, that he did not want him as a courier. Thereupon, before the first of June, the plaintiff commenced an action against the defendant, and recovered, and the question came up before the court of queen's bench, whether the action. under such circumstances, could be maintained. And the unanimous opinion of the court was that the action was maintainable, and on the ground that, although the time had not arrived when the contract was to commence, still, as the defendant had apprised the plaintiff that he would not perform it, the plaintiff was not bound to wait until the first of June or until the termination of the contract, it being for three months, before he brought the action. He could treat the breach as complete and recover against the defendant on the ground that there was a legal liability on the

part of the defendant to respond in damages. And the reasoning in that case, it seems to me, is very strong. It reviews the arguments upon the subject. For example, there would be just as much reason to say that the action could not be maintained until the first of September as that the action could not be maintained for a breach, prior to the first of June, because there were three months during which the service was to be performed and in one sense it could not be said that there was a complete non-fulfillment of the contract until the three months had expired. And when in that case and in this, the party who had become bound notified the other that he would not comply with his contract, he certainly ought not to complain if the other takes him at his word, for it may make a great difference to him as to what he shall do—as to other contracts he may make, whether or not that contract is binding on him. There are frequent cases where contracts run for years, and it would be unreasonable in such a case to require a party to wait all the time before he could institute an action against the delinquent person for damages. It seems to me that it is the better rule to hold that the party who has refused to perform his contract is liable at once to an action, and that whatever arises afterward or may arise in consequence of the time not having come or not having expired, should be considered in estimating the damages. For instance, if in consequence of the discharge of a servant, or of the refusal of a person to require or receive any of the service which would take time, the servant has the opportunity of engaging in other employment, that can be shown in mitigation of damages, and one of the objections that occurred to me at the argument, I think, may not have the weight that I then supposed, namely, that the status of the parties in relation to the extent of their liability must be considered as fixed when the suit was commenced. That is not so. On the contrary it is competent to show any facts which have occurred subsequent to the commencement of the suit for the purpose of determining the amount of damages which the party can recover; or, to apply it to this case, the amount of damages which the defendant could set off or recoup. For example, this was the case of a theater leased by the defendant to Grau for a particular time. It may be that in case Grau failed to comply with his contract, the defendant could lease the theater to some one else. Now, if that could have been done, and the violation of the contract on the part of Grau did not prevent the defendant from making the lease, then that may be taken into consideration to determine the amount of damages which McVicker has sustained for the violation of the contract. If, on the other hand, the fact that McVicker entered into this contract in June, 1873, and consequently made all his arrangements upon the hypothesis that the theater was to be used by Grau during the time named in the contract, prevented him from leasing the theater to other parties during that time, and so he lost the rent, there is no reason why Grau should not be responsible for the use of the theater during the whole time, and I have come to the conclusion that the fair result of the authorities upon this subject is that prima facie upon the showing of the plea Grau is responsible to McVicker for the amount which he agreed to pay, because the inference would be, that the defendant was prevented from leasing the theater to other parties. It may be, also, that the defendant could, himself, have used the theater during that time. If so, that would be taken into consideration, but I am only considering the question now in its apparent aspect, and I think the plea prima facie is good. The language of the plea is, after setting out the contract, that he, the defendant, was ready to comply with all the conditions on his part to be performed, which were in relation to lighting the theater and printing and posting advertisements, and furnishing the orchestra, etc., "that Grau after the contract was entered into and before the 9th day of February, 1874, and before commencing this suit, to-wit, the 9th day of January, 1874, wholly refused to take, receive, occupy, and rent the said theater of the said defendant for the purpose aforesaid on or from the said 9th day of February, 1874, for the term or time aforesaid or for any other term or time, and wholly refused to perform and fulfill the said agreement on his part, and then and there wholly discharged the said defendant from said agreement and from the performance of the same and wholly and absolutely broke and put an end to his said agreement and engagement, without the consent and against the will of him, the said defendant."

Now, I think that is a complete breach of the contract, and if McVicker instead of being the defendant were the plaintiff, he would be entitled to institute a suit at once against Grau for a breach of the contract although the time of its performance had not commenced. For these reasons the demurrer to the plea must be overruled.

NOTE. Where one party to a contract refuses to perform, the other party has an immediate right of action, and need not wait for the time of performance. Cort v. Ambergate, N. & B. & E. J. R. Co., 6 Eng. Law & Eq. 230; Hochster v. De Latour, 20 Eng. Law & Eq. 157; Traver v. Halsted, 23 Wend. 66; Franchot v. Leach, 5 Cow. 506; Ripley v. McClure, 4 Exch. 345; Danube & Black Sea R. Co., etc., v. Xenos, 103, E. C. L. 152. See, also, McPherson v. Walker, 40 Ill. 371; Wolf v. Willits, 35 Ill. 89; Frost v. Knight, L. R. 7 Exch. 114; Burtis v. Thompson, 42 N. Y. 246; Crabtree v. Messersmith, 19 Iowa, 179; Holloway v. Griffith, 32 Iowa, 409.