In re STERN et al.

Appeal of MANHATTAN ICE CO.

(Circuit Court of Appeals, Second Circuit. June 3, 1902.)

No. 129

1. INVOLUNTARY BANKRUPTCY—PETITION—ALLEGATIONS OF JURISDICTION—SUFFICIENCY—DEMURRER FILED AS PART OF ANSWER.

A petition in involuntary bankruptcy against a corporation, alleging its principal place of business within the court's jurisdiction for the greater portion of the preceding six months, and that it had property within such jurisdiction and owed debts amounting to $1,000, was sufficient on a demurrer for want of jurisdiction, which was filed as a part of the answer on which the parties went to final hearing, notwithstanding that such petition contained no allegation of the nature of the company's business.

2. SAME—PROVABLE CLAIMS—DAMAGES FOR BREACH OF EXECUTORY CONTRACT.

Under Bankr. Act 1898, § 59, providing for involuntary bankruptcy proceedings against a debtor by creditors having "provable claims," and section 63, defining provable claims as those founded on contract, and providing that unliquidated claims may be liquidated in such manner as the court may prescribe, and thereafter be provable, where a company which was furnishing its customers ice at so much per ton, payable weekly, under contracts covering a period of several years, broke such contracts and became unable to continue them in the future, the claims of the customers for damages sustained by reason of the company's inability to fulfill the executory portions of the contracts were "provable claims" in involuntary bankruptcy proceedings against the company.

3. SAME—JURISDICTIONAL AMOUNT—DAMAGES FOR BREACH OF CONTRACT—SUFFICIENCY OF EVIDENCE.

In an involuntary proceeding in bankruptcy against an ice company by former customers to whom it had agreed to furnish ice for several years at a certain price per ton, the evidence showed that only a few months of such contracts had expired when the company became unable to fulfill them; that petitioners used a thousand tons a year; that under the new contracts which they had been compelled to make they were paying an excess over the price specified in the broken contracts of from 60 cents to $1.50 per ton; that they had made unsuccessful attempts to get it cheaper; and that the price of ice fluctuated from year to year. Held, that the evidence was sufficient to sustain a finding of damages to petitioners exceeding $500, thus entitling them to maintain their petition.

Appeal from the District Court of the United States for the Southern District of New York.

See (D. C.) 114 Fed. 399.

S. H. Wandell, for appellant.

Moritz Frank, for appellees.

Before LACOMBE and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. This cause comes here upon the appeal of the Manhattan Ice Company from an order of the district court for the Southern district of New York adjudicating it a bankrupt. The appellant was engaged in the ice business, and entered into contracts with sundry customers to supply them with ice at $2 per ton, payable weekly, for terms extending during periods of from two to five years, the latest of said terms commencing on March 13, 1901. On or about April 11, 1901, said company permitted attachments to be put upon its property, receivers were appointed, and it

utterly failed to fulfill said contracts. Certain of said customers on May 4th joined in filing a petition in involuntary bankruptcy against said company, and it was duly adjudicated a bankrupt.

The first error assigned is that the court erred in overruling a demurrer to the sufficiency of the petition on the ground that it did not specify in what business the corporation was engaged, and therefore failed to show that the court had jurisdiction. The petition alleged that the corporation had had its principal place of business within the Southern district of New York for the greater portion of six months next preceding the date of filing the petition, and had property within said district and owed debts to the amount of $1,000. These allegations seem to be sufficient, especially in view of the fact that the demurrer was filed as a part of the answer on which the parties went to final hearing. The proofs showed that the total amount of petitioners' actual loss from the failure to deliver ice up to the date of the petition was less than $500, but that they had been obliged to make new contracts for future delivery of ice at prices so much higher than $2 per ton that the direct loss in replacing said contracts would be greatly in excess of $500. The court below held that said claims were not unliquidated, that the whole damages for the terms covered by the old contracts were provable in bankruptcy, that the petitioners were entitled to recover said damages without waiting for the expiration of the terms of the old contracts, and were creditors for the requisite amount.

The question presented by the assignments of error is whether the court erred in holding that said petitioning creditors had provable claims to the amount of $500. Counsel for the corporation contends that these claims are for debts to fall due in the future; that no such claims are provable in bankruptcy; and that the petitioners must be limited in their proofs to the amount due for damages at the time of filing the petition. The pertinent provisions of the bankrupt act are as follows:

"Sec. 59. Who may File and Dismiss Petitions. * * * (b) Three or more creditors who have provable claims against any person which amount in the aggregate in excess of the value of securities held by them, if any, to five hundred dollars or over, * * * may file a petition to have him adjudged a bankrupt."

"Sec. 63. Debts Which may be Proved. (a) Debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded upon an open account, or upon a contract express or implied. (b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may hereafter be proved and allowed against his estate."

The question as to what constitutes a provable claim in involuntary petitions in bankruptcy has been much discussed. It has been held that one having an unliquidated claim for damages for a tort was not such a creditor as to be entitled to institute involuntary proceedings. In re Brinckmann (D. C.) 103 Fed. 65. So it has been held that such claims and claims for rent to accrue under a lease or for breach of warranty are not provable as debts until they have been liquidated. In re Heinsfurter (D. C.) 97 Fed. 198; Beers v. Hanlin (D. C.) 99 Fed. 695; In re Mahler (D. C.) 105 Fed. 428. See, also, In re Morales, 5 Am. Bankr. R. 425, 105 Fed. 761.

But in the case at bar the question is not necessarily whether the claims are liquidated or unliquidated, but whether they are "provable." The statute provides that the petitioning creditors shall have "provable claims." Counsel for defendant corporation contends that damages to accrue in the future are not provable because they are uncertain in amount, and because not having yet accrued they are not yet in existence. But in actions for personal injuries, or for breaches of warranty in the sale of seeds, or for failure to deliver goods which have no recognized market value, the injured party is entitled to recover compensation for such elements of damage as are shown to be reasonably certain or probable, or such as naturally result in such cases and may be supposed likely to occur in the given case. 1 Suth. Dam. p. 251, §§ 120, 121, and cases cited; Passinger v. Thorburn, 34 N. Y. 634, 90 Am. Dec. 753; White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13; Strohm v. Railroad Co., 96 N. Y. 305; Railroad Co. v. Jones, 1 C. C. A. 282, 49 Fed. 343; Railroad Co. v. Harmon's Adm'r, 147 U. S. 571, 13 Sup. Ct. 557, 37 L. Ed. 284.

The authorities are conflicting as to whether an action will lie for damages for the breach of an executory contract before the stipulated time of such performance has arrived. The English cases and courts of many states, including New York, Illinois, Maryland, and Iowa, have held that a right of action accrues immediately. Benj. Sales (7th Ed.) p. 596; Frost v. Knight, L. R. 5 Exch. 322; L. R. 7 Exch. 111; Hochster v. De La Tour, 2 El. & Bl. 678; Burtis v. Thompson, 42 N. Y. 246, 1 Am. Rep. 516; Nichols v. Steel Co., 137 N. Y. 471, 33 N. E. 561; Fox v. Kitton, 19 Ill. 519; Dugan v. Anderson, 36 Md. 567–582, 11 Am. Rep. 509; McCormich v. Basal, 46 Iowa, 235.

Other states have held the contrary view. Thus, in Daniels v. Newton, 114 Mass. 530, 19 Am. Rep. 384, the whole subject was elaborately discussed, the leading English cases were not approved, and it was held that an absolute refusal of one party to an agreement "ever to take" certain real estate which he had agreed to buy in the future would not justify an action by the vendor for damages for breach before the expiration of the agreed time. This court adopted the former view in Marks v. Van Eeghen, 30 C. C. A. 208, 85 Fed. 853, and it has generally prevailed in the lower federal courts. Grau v. McVicker, 10 Fed. Cas. 996 (No. 5,708); Roehm v. Horst, 33 C. C. A. 550, 91 Fed. 345.

In the supreme court of the United States it was decided in U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168, and Lovell v. Insurance Co., 111 U. S. 264, 274, 4 Sup. Ct. 390, 28 L. Ed. 423, that where a party to an executory contract disables himself to perform the other party might regard it as terminated, and demand whatever damage he has sustained. And in Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, it was held, after great deliberation, that a seller's breach in respect of part of the deliveries under a contract for successive deliveries justified the buyer in rescinding the whole contract. In Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984, one dealer in ice took a cargo from an-

other dealer, agreeing to return the same amount the following season. Early in said following season the dealer who had received the ice declined to ship as agreed, and asked for other terms, leaving the matter open for future negotiations. The supreme court, holding that there had been no final breach, referred to the conflicting views heretofore cited, but expressly refused to decide whether an absolute refusal to perform in the midst of the shipping season would have conferred upon the other dealer a right of action for a breach before the expiration of the contract period for performance. In Pierce v. Railroad Co., 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591, plaintiff having been injured while in the employ of defendant, and having entered into an agreement whereby he released all claims against defendant, it agreed to pay him certain wages per month. Defendant having abandoned said contract and refused to make further payments thereunder, plaintiff brought suit for the full amount of damages for such breach during his life. The court said:

"The recent tendency of judicial decisions in this country, in actions of contract as well as in actions of tort, has been toward allowing entire damages to be recovered, once for all, in a single action, and thus avoiding the embarrassment and annoyance of repeated litigation. This especially appears by well-considered opinions in cases of agreements to support or pay wages."

The court said that as the defendant had committed an absolute breach of the entire contract at a time when plaintiff was entitled to require performance, the plaintiff

—"Had the right to elect to treat the contract as absolutely and finally broken by the defendant, to maintain this action once for all as for a total breach of the entire contract, and to recover all that he would have received in the future, as well as in the past, if the contract had been kept. In so doing he would simply recover the value of the contract to him at the time of the breach, including all the damages, past or future, resulting from the total breach of the contract. The difficulty and uncertainty of estimating damages that the plaintiff may suffer in the future is no greater in this action of contract than they would have been if he had sued the defendant in an action of tort to recover damages for the personal injuries sustained in its service, instead of settling and releasing those damages by the contract now sued on."

But the court, again referring to the decision in Daniels v. Newton, supra, that an absolute refusal to perform before performance is due by the terms of the contract is not a present breach for which an action may be maintained, says:

"It is proper to remark that the point decided in Daniels v. Newton was left open in Dingley v. Oler, 117 U. S. 490, 503, 6 Sup. Ct. 850, 29 L. Ed. 984, and has never been brought into judgment in this court."

In Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, the question was presented upon the following facts: Horst Bros. entered into 10 separate written contracts with Roehm to sell him hops, to be delivered at various dates in the future, extending during a period of five years, each contract covering a single season. After a part of the contracts had been fulfilled Roehm refused to receive any more shipments, and Horst brought suit to recover damages for the breach of the contracts performance of which was not yet due. The court elaborately discusses its previous decisions and the English cases already referred to, and concludes as follows:

"If in this case these ten hop contracts had been written into one contract for the supply of hops for five years in installments, then when the default happened in October, 1896, it cannot be denied that an immediate action could have been brought in which damages could have been recovered in advance for the breach of the agreement to deliver during the two remaining years. But, treating the four outstanding contracts as separate contracts, why is it not equally reasonable that an unqualified and positive refusal to perform them constitutes such a breach that damages could be recovered in an immediate action? Why should plaintiff be compelled to bring four suits instead of one? For the reason above stated, and having reference to the state of the authorities on the subject, our conclusion is that the rule laid down in Hochster v. De La Tour is a reasonable and proper rule to be applied in this case and in many others arising out of the transactions of commerce of the present day. As to the question of damages, if the action is not premature, the rule is applicable that plaintiff is entitled to compensation, based, as far as possible, on the ascertainment of what he would have suffered by the continued breach of the other party down to the time of complete performance, less any abatement by reason of circumstances of which he ought reasonably to have availed himself. If a vendor is to manufacture goods, and during the process of manufacture the contract is repudiated, he is not bound to complete the manufacture, and estimate his damages by the difference between the market price and the contract price, but the measure of damage is the difference between the contract price and the cost of performance. Hinckley v. Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967. Even if in such cases the manufacturer actually obtains his profits before the time fixed for performance, and recovers on a basis of cost which might have been increased or diminished by subsequent events, the party who broke the contract before the time for complete performance cannot complain, for he took the risk involved in such anticipation. If the vendor has to buy instead of to manufacture, the same principle prevails, and he may show what was the value of the contract by showing for what price he could have made subcontracts, just as the cost of manufacture in the case of a manufacturer may be shown. Although he may receive his money earlier in this way, and may gain or lose by the estimation of his damage in advance of the time for performance, still, as we have seen, he has the right to accept the situation tendered him, and the other party cannot complain." "In this case plaintiffs showed at what prices they could have made subcontracts for forward deliveries according to the contracts in suit, and the difference between the prices fixed by the contracts sued on and those was correctly allowed."

This decision dispenses with the necessity of further discussing the questions herein. The cases cited by counsel for the appellant of unliquidated damages for tort have no application here. Cases involving claims for sums of money payable in the future, as by promissory notes or bonds, are expressly discussed and distinguished in the opinion of the supreme court in Roehm v. Horst, supra.

The petitioners herein proved that the amount of ice used by them in their business was about 1,000 tons a year; that under the new contracts which they were obliged to make they were paying an excess over the contract price with the petitioners of from 60 cents to $1.50 a ton; that the price of ice fluctuated from year to year; that they had made unsuccessful attempts to get their ice cheaper. Upon this evidence the court was justified in finding, and it found, that this evidence tended to show that the petitioners could not replace the contract without suffering a direct loss much in excess of $500, and that they were creditors for the requisite amount, and were not obliged to await the expiration of the time for which the contracts were to continue.

The decree is affirmed.