In re PETTINGILL & CO. Ex parte PETERS. Ex parte CHICAGO NEWSPAPER UNION. Ex parte PEIRSON. Ex parte BURLINGTON HAWKEYE. Ex parte KELLOGG NEWSPAPER CO.

(District Court, D. Massachusetts. April 18, 1905.)

No. 8,742.

1. STATUTE OF FRAUDS—MEMORANDUM OF CONTRACT—WRITTEN OFFER ACCEPTED ORALLY.

A written and signed offer, which is accepted, either in writing or orally, constitutes a sufficient memorandum of contract under the statute of frauds.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Frauds, Statute of, §§ 195, 244.]

Sufficiency of expression of consideration in memorandum within statute of frauds, see note to Schoate v. Hoogstraat, 46 C. C. A. 183.]

2. BANKRUPTCY—PROVABLE DEBTS.

Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], the provability of a claim depends upon its status at the time of the filing of the petition in bankruptcy. If not then a provable debt, as defined in the act, it cannot be proved, although it may thereafter come within such definition.

3. SAME—TEST OF PROVABILITY—ANTICIPATORY BREACH OF CONTRACT.

If a bankrupt, at the time of bankruptcy, by disenabling himself from performing a particular contract, and by repudiating its obligation, could give the other party the right to maintain at once a suit in which damages could be assessed at law or in equity, then such party may prove as a creditor in bankruptcy, on the ground that bankruptcy is the equivalent of disenablement and repudiation.

4. SAME—CONTINGENT LIABILITY.

The liability of a bankrupt on a guaranty executed by him of the payment by a corporation of dividends at a certain rate on its stock, owned by another, with respect to dividends not due or payable at the time of the filing of the petition in bankruptcy, is so far contingent that a claim based thereon is not a provable debt, within the provisions of Bankr.

Act July 1, 1898, c. 541, § 63a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447] at least where, at the time of the bankruptcy, the corporation was a going concern.

5. SAME—CONTRACT FOR FUTURE PURCHASE OF PROPERTY.

Bankruptcy is such a breach of a contract to purchase stock at a stated price and time, which time was subsequent to bankruptcy, that a claim for damages for the breach is a provable debt.

In Bankruptcy. On review of decision of referee with respect to certain claims.

See 135 Fed. 218.

Joseph W. Lund, for trustee.
John Abbott and Henry C. Stetson, for creditors.

LOWELL, Circuit Judge. Pettingill, styled Pettingill & Co., an advertising agent, was indebted for advertising Greene's Nervura to the creditor, publisher of a newspaper. This indebtedness Pettingill had agreed to pay in four equal parts, in October, 1901, April and October, 1902, and April, 1903. On August 31, 1901, Pettingill sent a signed circular to the creditor, in which, after eulogizing the prospects of Nervura, he proceeded:

"Instead of deferring final settlement of the Dr. Greene business for the year past, until April, 1903, as arranged for in our contract with you, we propose to turn over to you, on or before October 1st of this year, the six per cent. preferred stock of the Dr. Greene Nervura Company, issued as described, dividends guaranteed by Pettingill & Co. until stock is retired, in full settlement of the Dr. Greene Nervura business to date.

"We enclose herewith a blank acceptance, on the return of which, duly signed, a new contract will be forwarded."

It was agreed at the argument that the "new contract" referred to in the sentence last quoted concerned only future business, and not the existing debt, or its payment by the issuance of stock or otherwise.

The creditor signed and returned the "blank acceptance" above mentioned, dated September 25, 1901. It read as follows:

"Instead of the settlement in four installments, as provided in our contract with Pettingill & Company, we agree to accept six per cent. preferred stock of the Dr. Greene Nervura Co., total issue not to exceed $400,000, 6%, callable at any time after three years at 105, and any unpaid dividends, in settlement of our account for Dr. Greene's Nervura Advertising for the year beginning October 1st, 1900. Dividends on said stock guaranteed by Pettingill & Co., until stock is retired. It is understood that stock for the full amount of such account is to be issued to us October 1st, 1901, dividends payable semiannually, to accrue from that date."

This was sent to and received by Pettingill. A stock certificate for 263 shares of the preferred stock of Dr. Greene Nervura Company, a corporation, dated March 1, 1902, was sent to the creditor. Thereafter Pettingill & Co., the firm, disposed of its assets to Pettingill & Co., the bankrupt corporation, and the corporation assumed the business debts of Pettingill. An involuntary petition against the corporation was filed March 29, 1904, upon which adjudication followed April 18, 1904. Against the Dr. Greene Nervura Company an involuntary petition was filed April 7th, and adjudication followed on April 26th. Under the guaranty of the Pet-

tingill corporation the creditor seeks to prove against it for the amount of the dividends coming due on the Nervura stock, both before and after bankruptcy, and for the value of the Nervura stock. The referee allowed the proof for dividends accruing before the date of the petition against the Pettingill corporation, and disallowed the rest of the claim. There is no support for the claim for the value of the stock. No contract was made by the bankrupt concerning it.

The proof for dividends to accrue after the date of the petition was resisted. First, because the contract was outside the statute of frauds. But the circular was signed by Pettingill, and the offer which it contained was accepted by the creditor. An offer written and signed, though accepted but orally, is a sufficient memorandum under the statute. Browne on the Statute of Frauds, § 345a. The referee was of the opinion that the circular and acceptance did not constitute a contract to guaranty the dividends, but only a contract to make a future contract of guaranty. This does not seem to me the natural meaning of the transaction. Second, the referee was further of opinion that the liability of the firm, as shown by the offer and acceptance, was not a business debt of the firm, so as to be assumed by the corporation. But, considering that the debt which the guaranty replaced was undoubtedly a business debt, and looking at the nature of the whole transaction, it seems to me that the corporation assumed the liability. If these conclusions be correct, it is not disputed that the claim is provable unless it fails by reason of its contingency. The question presented is this: If, by a valid contract, A. guaranties to B. the payment of 10 per cent. dividends upon corporate stock held by the latter, and then becomes bankrupt, can B. prove against A.'s estate in bankruptcy for damages arising from corporate failure to pay 10 per cent. dividends after the filing of the petition in bankruptcy? Is such a claim so far contingent that it may not be proved under Bankr. Act July 1, 1898, c. 54b, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]?

Under that act the provability of a claim depends upon its status at the time the petition is filed. If, at that time, the claim is provable, within the definition of section 63, it may be proved. 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]. If, at that time, it does not fall within that definition, but does so at some later time, it cannot be proved. Swarts v. Fourth Bank, 117 Fed. 1, 54 C. C. A. 387; Moulton v. Coburn (C. C. A.) 131 Fed. 201. This is not an invariable rule in bankruptcy. Under some bankrupt acts provability is related to another time. See Williams on Bankruptcy, p. 114; Rev. Laws Mass. c. 163, § 31. If section 63a (2) and (5) and section 57i (30 Stat. 562, 560 [U. S. Comp. St. 1901, pp. 3447, 3443]) establish exceptions to the rule above stated, the exceptions are of most minute scope, and do not concern the case at bar. Section 63b "adds nothing to the class of debts which might be proved under paragraph 'a.'" Dunbar v. Dunbar, 190 U. S. 340, 350, 23 Sup. Ct. 757, 47 L. Ed. 1084. The court has, therefore, to consider if

the claim of Peters against Pettingill at the time the petition was filed was a provable claim within section 63a of the bankrupt act. It cannot be brought within clauses (1), (2), (3), or (5). If provable, it must be so because it is a claim founded upon a contract within the definition of clause (4); but not every liability founded upon a contract can be proved in bankruptcy. This was decided of a covenant to pay an annuity to a woman dum sola (Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084); and it has often been decided of covenants to pay rent, in so far as the rent accrues after bankruptcy. These claims are disallowed, not because they are not founded upon contract, but because at the filing of the petition, the time when the status of the claim is fixed, the damages arising from the breach of contract are so far contingent that they cannot be computed by any process known to law. As was said by the court in Riggin v. Magwire, 15 Wall. 549, 552, 21 L. Ed. 232, where a claim for breach of a covenant of seisin was denied proof under the act of 1841:

"If an action at law had been brought on a covenant at that time [bankruptcy], nominal damages at most, if any damages at all, could have been recovered."

That the act of 1841 went as far as the act of 1898 in admitting to proof claims subject to a contingency cannot be disputed.

Some statutes of bankruptcy, indeed, by express language admit to proof some claims which could not be liquidated in any action at law or in equity brought at the time of bankruptcy. In some sense these statutes empower a court of bankruptcy, in the language of the Supreme Court in Dunbar v. Dunbar, to guess at the creditors' damage. And this course has some advantages, for the bankrupt is thus relieved from liabilities which otherwise would hamper him after his discharge. The act of 1898, however, authorizes none of these guesses, and admits to proof only those claims which can be liquidated by legal proceedings instituted at the time of bankruptcy. Other liabilities of the bankrupt are deemed so far contingent that they cannot be proved in bankruptcy, nor are they released by the bankrupt's discharge.

For admission to proof, however, the claim need not arise before bankruptcy, nor need the contract be broken theretofore. It is sufficient for proof if the breach of contract and bankruptcy are coincident. To some extent bankruptcy operates as a breach of the bankrupt's contracts. This has been deemed true of the bankrupt's commercial paper, even though that paper is made payable after bankruptcy. It is true that the trustee in bankruptcy in some cases may elect to keep the bankrupt's contracts alive and to carry them out. In other cases, the creditor may be able to ignore the breach arising from bankruptcy and to keep a contract alive against the bankrupt. With these limitations upon the rule we need not deal here. If the trustee desires to keep the contract alive, he must manifest his election within a reasonable time. Where he does not do this, and where the creditor, by seeking to prove, manifests his election to treat the contract as broken, the court of bankruptcy

may permit proof of claims arising from a breach of contract, which breach did not occur before bankruptcy, but was caused constructively by the adjudication of bankruptcy itself. See Ex parte Swift, 112 Fed. 315, 50 C. C. A. 264; Ex parte Pollard, 2 Lowell, 411, Fed. Cas. No. 11,252. Bankruptcy itself may be treated as a breach of the bankrupt's contracts, analogous to that complete repudiation of the contract before the time of performance which was shown in Hochster v. Delatour, 2 E. & B. 678, and in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, or to a complete disenablement of performance of the contract, as in Frost v. Knight, 7 Exch. 111.

It seems, therefore, that the test of provability under the act of 1898 may be stated thus: If the bankrupt, at the time of bankruptcy, by disenabling himself from performing the contract in question, and by repudiating its obligation, could give the proving creditor the right to maintain at once a suit in which damages could be assessed at law or in equity, then the creditor can prove in bankruptcy on the ground that bankruptcy is the equivalent of disenablement and repudiation. For the assessment of damages proceedings may be directed by the court under section 63b (30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]).

What is the result of applying this test to the case at bar? Could Peters have sued at once in the circumstances supposed? No decided case exactly in point has been found by counsel or by the court. Reference has already been made to Dunbar v. Dunbar and to cases involving a breach of the contract to pay rent. In Moch v. Market St. Bank, 107 Fed. 897, 47 C. C. A. 49, the liability of a bankrupt indorser of commercial paper not due at the filing of the petition was held a provable debt. See In re Semmer Glass Co. (C. C. A.) 135 Fed. 77. In Re Stern, 116 Fed. 604, 54 C. C. A. 60, a creditor was allowed to prove for breach of a contract to deliver ice for a long period extending beyond the date of bankruptcy. To allow damages to be assessed in this case of anticipatory breach of the contract is clearly within the rule of Hochster v. Delatour and Roehm v. Horst. In Cobb v. Overman, 109 Fed. 65, 48 C. C. A. 223, 54 L. R. A. 369, the Court of Appeals for the Fourth Circuit held that an annuity was provable under section 63a (1) as a "fixed liability * * * absolutely owing." It is hard to see what sum was evidenced by the bond as absolutely owing, except the penalty itself. See Lowell on Bankruptcy, § 166; Eden on Bankruptcy (2d Ed.) 122. The claim would seem provable more easily under clause (4). In Hibberd v. Bailey, 129 Fed. 575, 64 C. C. A. 143, the Court of Appeals for the Third Circuit held that a claim against the bankrupt surety on an administrator's bond was provable where the administrator's liability had been fixed before bankruptcy. The decision seems to depend upon the probate laws of Pennsylvania, for it is said by the court that the decree against the administrator "is all that is necessary as a prerequisite to the proceedings against the surety." 129 Fed. 579, 64 C. C. A. 579. Demand on the administrator is thus dispensed with, and the surety's liability is made primary and uncontingent. On the other

hand, in Goding v. Roscenthal, 180 Mass. 43, 61 N. E. 222, it was held that a surety on a bankrupt's bond for dissolving an attachment could not prove, where he had not been called upon to pay until after bankruptcy. See, also, Morgan v. Wordell, 178 Mass. 350, 59 N. E. 1037, 55 L. R. A. 33. In Dunbar v. Dunbar the Supreme Court cited all the cases above mentioned which had then been decided, without unfavorable comment.

Upon the whole, it seems that, where A. guaranties to B. the payment of dividends by a corporation at a certain rate, and then repudiates the contract and disenables himself from performing it, B. cannot recover as to future dividends, as for a breach of an anticipatory contract, even under the broad rule laid down in Roehm v. Horst. The case is nearer to Dunbar v. Dunbar, and a computation of damages is deemed too difficult by reason of the doubt of the corporation's action.

In the case at bar the Nervura corporation became bankrupt but a few days after the bankruptcy of Pettingill, and was undoubtedly insolvent at the time of the Pettingill bankruptcy. Had the Nervura bankruptcy occurred first, it might, perhaps, have so determined the inability of the Nervura corporation to pay the dividends guarantied that recovery could be had at once upon Pettingill's guaranty. But the subsequent bankruptcy of the Nervura corporation, however closely impending, cannot enlarge the creditors' rights.

Ex parte Chicago Newspaper Union    The facts were the same as in the Peters case, except that the "blank acceptance" signed and returned by the creditor had written upon it:

"Pettingill & Co., guarantee dividends and redemption of stock three years after date of issue."

From the referee's report I gather that these words were written by the authority of Pettingill before the "blank acceptance" was sent to the creditor. If so, the acceptance by the creditor established a contract binding under the statute of frauds. As was stated in the Peters case, the creditor's claim under the guaranty of dividends cannot be proved in bankruptcy. The contract to redeem the stock three years after the date of issue may fairly be construed as a contract to purchase the stock at par at the time specified. As to the provability of the claim arising from the last-mentioned contract, the question presented is this: Can a claim for breach of the bankrupt's contract to buy goods at a fixed date after bankruptcy be proved in the bankruptcy proceedings? If the creditor so elects, and if the trustee does not elect to keep the contract alive, I am of opinion that proof is possible, by the analogy of In re Swift, 112 Fed. 315, 50 C. C. A. 264, Hochster v. Delatour, and Roehm v. Horst. What should be the measure of damages need not now be discussed. The claim of the Evening News Association is similar.

Ex parte Peirson. In this case the acceptance contained the words:

"Redemption of stock guaranteed by Pettingill & Co. at price paid."

These words import a contract to redeem at any time at the option of the creditor, but other statements in the acceptance and accompanying circular make this construction somewhat doubtful. In any construction the claim is provable.

Ex parte Burlington Hawkeye. Here there was an express written agreement, signed by Pettingill, to redeem at the end of five years at par. The claim is provable.

Ex parte Kellogg Newspaper Company. The "blank acceptance" here contained a statement that Pettingill would purchase in five years for the price paid. The claim is provable.

The judgment of the referee is affirmed in the Peters case. In all the others it is reversed, with directions to proceed in accordance with this opinion.