In re GLICK et al.

(District Court, S. D. New York. February 8, 1911.)

BANKRUPTCY (§ 316*)—CLAIMS—COMMERCIAL AGENCY SUBSCRIPTION.

Where the bankrupt contracted for financial reports from a commercial agency, agreeing to pay $150 on May 1, 1910, for reports for the period extending from February 1, 1910, to April 30, 1911, and from the date of the contract until March 4, 1910, when the subscriber became bankrupt, reports were furnished as demanded, but no service was rendered after that date, the subscription was provable for the entire amount as a promise to pay a definite sum of money contained in a nonnegotiable instrument in writing.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

In the matter of bankruptcy proceedings of David Glick and others. On petition to review the disallowance of a claim filed by the Bradstreet Company by the referee. Ruling reversed, and claim allowed.

Mr. Frederick, for petitioner.
Mr. Roth, opposed.

HOUGH, District Judge. The Bradstreet Company (the well-known Mercantile Agency) on January 31, 1910, entered into a written contract with the bankrupts (who were merchants in this city), whereby it agreed to furnish information regarding the character and credit of persons in business in the United States and Canada to the bankrupts for the period February 1, 1910, to April 30, 1911. For this service the bankrupts agreed to pay the Bradstreet Company $150 "payable May 1, 1910."

From the date of the contract until March 4, 1910, Bradstreets (it is admitted) did whatever they were called upon to do, and on the date last given a petition in bankruptcy was filed against their customer or client.

Adjudication having followed in due course, Bradstreets filed a proof of claim for the $150 called for by the contract. There is no evidence that either the receiver or the trustee endeavored to keep alive the contract in question, or that the claimant was ever called

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

upon to render any service subsequent to March 4, 1910. The question submitted is whether this debt is provable, and, if provable at all, for what amount.

Admittedly the facts are exactly like those in Matter of Buffalo Mirror & Beveling Co., 15 Am. Bankr. Rep. 122. In my judgment that case was properly decided, and there is little to add to the opinion of Referee Hotchkiss.

Let it be assumed that the contract out of which the claim in suit grew was executory; that is, when the contract was made, something remained to be done on both sides. Yet it has been settled upon much consideration in this circuit that an executory contract will give rise to a provable claim. In re Stern, 116 Fed. 604, 54 C. C. A. 60. Since therefore the claim is provable, the only inquiry remaining is: What is the measure of damages? Obviously such measure must be sought in the contract itself, and under that instrument it made no difference whether the bankrupts ever called for any information or not. What they sold (if they can be said to have sold anything) was the right to get information, and that right was considered by the parties to the agreement to be worth $150. It appears to me therefore clear that no other measure of damage is possible except the face of the contract and the amount for which claim is filed. Agreements such as this are very frequent, and may almost be said nowadays to constitute a legal class by themselves; but, if an analogy be sought among older and more familiar legal documents, it seems to me that the written contract at the basis of this claim is a promise to pay a definite sum of money contained in a nonnegotiable instrument in writing. It is therefore a provable debt for the full amount of the promise, just as is a promissory note, with of course due allowance for interest in the events provided for by the statute.

The claim is allowed as filed.