### In re D. LEVY & SONS CO.

#### (District Court, D. Maryland.   Oct. 31, 1913.)

1. MASTER AND SERVANT (§ 24*)—CONTRACT OF EMPLOYMENT—BREACH—BANKRUPTCY.

Where claimant continued to work and receive weekly payment of wages under a contract of employment after her employer had placed his affairs in the hands of a liquidating committee of his creditors, his act in so doing did not constitute a breach of the contract.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 18; Dec. Dig. § 24.*]

2. BANKRUPTCY (§ 318*)—CONTRACT OF EMPLOYMENT—BREACH.

An employé of a bankrupt under a contract for annual employment at a specified sum per week is not entitled to prove a claim against the estate in bankruptcy for damages for breach of the contract resulting from the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 481, 482; Dec. Dig. § 318.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the D. Levy & Sons Company. Claim of employé for breach of contract of employment. On review of a referee's order denying the claim. Affirmed.

Myer Rosenbush, of Baltimore, Md., for exceptant.
Martin Lehmayer, of Baltimore, Md., for claimant.

ROSE, District Judge. The bankrupt corporation made ladies' shirt waists. The claimant, a Miss Grinoch, was a designer of them. On the 21st of September, 1912, she entered into a contract with the bankrupt to continue in its employ for a period of one year at the rate of $60 per week. In December, 1912, the bankrupt became financially embarrassed. It placed its affairs in the hands of a liquidating committee of its creditors. This committee retained claimant's services. An involuntary petition in bankruptcy was filed in February, 1913. An adjudication promptly followed. While the referee liquidated the

plaintiff's claim for $1,000, he ruled that it was not provable. The claimant filed a petition for review. The specific question is whether installments of salary which have not been earned and are not due at the time of the filing of the petition in bankruptcy are then debts absolutely owing.

Claimant's contention may be briefly summarized. Whether claims for such salary are or are not provable depend entirely upon whether or not a breach of the contract of employment has been committed before bankruptcy or whether the bankruptcy itself operates as a breach. 3 Remington, 167.

So soon as one of the parties to an executory contract breaks or repudiates it, the other may sue, although the time for performance has not arrived. Hochster v. Delatour, 2 E. & B. 678; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953.

An adjudication in bankruptcy is, as of the date of the filing of the petition, an anticipatory breach by the bankrupt of its unfulfilled contracts. In re Neff, 19 Am. Bankr. Rep. 23, 157 Fed. 57, 84 C. C. A. 561, 28 L. R. A. (N. S.) 349; In re Pettingill, 14 Am. Bankr. Rep. 757, 137 Fed. 840, 70 C. C. A. 338; In re Swift, 7 Am. Bankr. Rep. 374, 112 Fed. 315, 50 C. C. A. 264; In re Spittler (D. C.) 18 Am. Bankr. Rep. 425, 151 Fed. 942; In re Stern, 8 Am. Bankr. Rep. 569, 116 Fed. 604, 54 C. C. A. 60; Wood v. Fisk, 156 App. Div. 497, 141 N. Y. Supp. 343; Woodman on the Law of Trustees in Bankruptcy, § 447. The above-stated principles are specifically applicable to a claim such as hers. In re Silverman (D. C.) 4 Am. Bankr. Rep. 83, 101 Fed. 219; In re Dunlap Carpet Co., 20 Am. Bankr. Rep. 882, 163 Fed. 541. Some of the authorities say that it is not every adjudication in bankruptcy which amounts to an anticipatory breach but only those in which the adjudication is the result of a voluntary act on the part of the bankrupt.

[1] Claimant says that, when the bankrupt placed its affairs in the hands of a liquidating committee of its creditors, it voluntarily incapacitated itself from the further performance of the contract. This contention can scarcely be sustained. Neither the committee nor the claimant treated the contract as at an end. It continued to make weekly payments to her; she continued to accept them from it.

In this case the adjudication was in form voluntary. She asserts that it was in substance otherwise. It is unnecessary to pass on that question. It is one which may be raised in not a few cases. Sometimes a bankrupt is anxious, and perhaps legitimately anxious, to have bankruptcy proceedings instituted at once. A voluntary petition must be accompanied by proper schedules. The preparation of such schedules may take some time. A creditors' petition can be filed with greater expedition. It does not seem desirable that the provability of such a claim as that here at issue shall depend upon a distinction which may so often be without real substance. The trustee and the objecting creditors rely upon In re Inman & Co. (D. C.) 171 Fed. 185; In re American Vacuum Cleaner Co. (D. C.) 192 Fed. 939. In the former of those cases Judge Newman made an elaborate review of all the authorities. If the cases of In re Silverman and In re Dunlap

Carpet Co., supra, go to the length for which claimant contends, he refused to follow them. It should be stated that the opinion in the later one of the two, viz., In re Dunlap Carpet Co., was delivered by then District, now Circuit, Judge McPherson. Judge McPherson sat as a member of the Circuit Court of Appeals for the Third Circuit in the subsequent case of In re Dr. Voorhees Awning Hood Co., 188 Fed. 425, 110 C. C. A. 215. From an examination of the report of that case in the District Court in 187 Fed. 611, it would appear that in effect the decision of the Circuit Court of Appeals is in harmony with In re Inman & Co. rather than with In re Dunlap Carpet Co. I do not feel certain, however, that the mind of the court was specifically directed to the particular question now under consideration.

[2] The more persuasive case is one which does not deal with this specific question at all. In Re Roth & Appel, 181 Fed. 668, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270, the Circuit Court of Appeals for the Second Circuit held that a claim for installments of rent falling due after the filing of a petition in bankruptcy was not provable, because in their opinion such claim was altogether contingent. They say rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminates, the obligation to pay ceases. Consequently a covenant to pay rent creates no debt until the time stipulated for payment arrives. The compensation contracted to be given in the future for services still to be rendered is a sum stipulated to be paid for such services. The rendition of the services is the consideration for it. If the right to demand such services terminates, the obligation to pay for them ceases precisely as in the case of rent.

The Circuit Court of Appeals further says that the lessee may quit the premises with the lessor's consent precisely as in contracts of service the contract may at any time be terminated by mutual consent. That distinguished court felt that rent contracts and contracts for services were in the same class and cited as authority for their own decision In re Inman & Co., supra.

Roth v. Appel has been expressly followed by the Circuit Court of Appeals for the Ninth Circuit in Colman v. Withoft, 195 Fed. 250, 115 C. C. A. 222. It is not easy to distinguish between contracts which are contingent and those which are not. It is highly important that the rule applied in such matters shall be uniform. The later cases and those of the higher authority reject such claim as that made in this case. I should not feel justified in differing with them even if I had a greater theoretical doubt as to their correctness than I do in fact entertain. They certainly are not opposed to any sound public policy. There are some grave objections to upholding such contracts against a bankrupt's estate. No one will ever try to do so when the market value of his services is equal to or exceeds the value placed upon them by his contract with the bankrupt. Claims of this kind will be most insistently urged in those very cases in which the disparity between the contract and the market value of the services is the greatest. Such differences will be perhaps most marked when the contract valuation is the result of the partiality of relatives and friends or of the recipro-

cally high appreciation which the different salaried officers of a corpo-. ration may have of each other.

For the reasons stated, the order of the referee will be affirmed at the cost of the claimant.