ISAAC McLEAN SONS CO. v. WILLIAM S. BUTLER & CO., Inc.

(District Court, D. Massachusetts. October 31, 1914.)

RECEIVERS ☞149—PROVABLE CLAIMS—DAMAGES FOR BREACH OF CONTRACT OF EMPLOYMENT.

    A receivership for a corporation, which is to result in the distribution of all of its property among its creditors, has the same effect as its bankruptcy would have had upon its unperformed contracts, and an employé, under an unexpired contract of employment not adopted by the receiver, may treat the contract as broken and prove a claim for damages for the breach against the estate, provided the amount of such damages can be determined by recognized methods of computation within the time allowed for proving claims.

    [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 261–266; Dec. Dig. ☞149.]

In Equity. Suit by the Isaac McLean Sons Company against William S. Butler & Co., Incorporated. Heard on claims, disputed by receivers, of Elizabeth F. Sullivan, Agnes Murphy, James A. Gagnon, and John N. Jowett. Claims allowed.

See, also, 207 Fed. 705, 125 C. C. A. 223, and (D. C.) 208 Fed. 730.

Wm. F. Wharton, of Boston, Mass., for plaintiff.

Frederick H. Nash, of Boston, Mass., for defendant.

Choate, Hall & Stewart, of Boston, Mass., for receivers.

Malachi L. Jennings, of Boston, Mass., for claimant Sullivan.

Mrs. Mary Mahan, of Boston, Mass., for claimant Murphy.

Carver, Wardner, Cavanagh & Walker, of Boston, Mass., for claimant Jowett.

Lee M. Friedman, of Boston, Mass., for claimant Gagnon.

DODGE, Circuit Judge. The disputed claims above mentioned are among those referred to a special master, under the order of court entered December 15, 1913, relating to claims against the above-named company. Having heard the evidence relating to them, the master has reported as to each of the claims, allowing it in an amount stated in his report. The receivers object to each allowance thus reported, and contend that, upon the facts found, each claim should be disallowed.

The report was filed April 14, 1914, and no exceptions to it have been filed at any time, either by the receivers or any other party in interest. It therefore stands confirmed under rule 66 of the present equity rules (198 Fed. xxxvii, 115 C. C. A. xxxvii). But, notwithstanding this confirmation, no one denies that the court may decline to follow its result and disallow the claim, if satisfied that the decision of the master on the question of law upon which its allowance depends was wrong. The order of the court required the master only to "hear the parties and their evidence and report thereon to the court." The questions of law arising were, as he states in his report, nevertheless argued before him by both parties and have been dealt with by him for that reason.

The facts found being thus undisputed, the question they raise is substantially the same in each case. Having stated his reasons for the result reached in regard to the claim of Elizabeth F. Sullivan, the master has referred for them to his report upon that claim in his report upon each of the other claims. I therefore consider that claim first.

1. Elizabeth F. Sullivan contracted in writing with the defendant William S. Butler & Co., Incorporated (hereinafter called the Butler Company), to take charge of one of its departments for one year from July 3, 1912, at a salary of $4,000 for the year. The receivers in this case having been appointed on November 7, 1912, she was dismissed by them on November 9, 1912. The sum allowed her by the master is what her agreed salary would have amounted to from the time of her dismissal to July 3, 1913, less what she earned under other employment after her dismissal and before the latter date. The receivers do not dispute the amount allowed ($1,548.04), if she is entitled to any amount.

Although the receivers might have adopted the contract, they were not bound to do so; their decision not to adopt was made without delay, and in the absence of adoption by them the receivership must be regarded as having prevented the company from performing it. In the case of an uncompleted contract of employment like this, a receivership of the employer's property and business has been regarded as preventing completion by operation of law, leaving neither party further bound by it, and leaving the employé no allowable claim for damages. People v. Globe, etc., Co., 91 N. Y. 174. This case has been followed in Malcomson v. Wappoo Mills (C. C.) 88 Fed. 680, where the unperformed contract was for the sale and delivery of goods; also in Re Inman, 175 Fed. 312, a bankruptcy case, where the effect of the seller's bankruptcy upon a like contract was in question.

But, in bankruptcy, the view taken in this circuit has been, in cases like the two last cited, that the purchaser's bankruptcy is the equivalent of disenablement and repudiation on his part, which the seller may treat as a breach and thereby acquire a provable claim for his damages. Re Swift, 112 Fed. 315, 50 C. C. A. 264; Re Pettingill, etc., Co., 137 Fed. 144; Pratt v. Auto, etc., Co., 196 Fed. 495, 116 C. C. A. 261. The same effect upon the contract is given, by a recent decision of the Court of Appeals for the Seventh Circuit, to the bankruptcy of a transfer company which was under contract with a hotel to furnish service for a term of years, unexpired at the bankruptcy, and to pay for the exclusive privilege of doing so. Re Frank E. Scott Transfer Co., 216 Fed. 308, 132 C. C. A. 452 (October 1, 1913).

A receivership resulting, as this is to result, in the distribution by the court of all the defendant's property, pro rata, among its creditors, is to be regarded as having the same effect as its bankruptcy would have had upon its unperformed contracts like the one here in question. See Penna., etc., Co. v. New York, etc., Co., 198 Fed. 721, 743, 117 C. C. A. 503; in the Court of Appeals for the Second Circuit. In this case, as in that, there was no appointment of a receiver over

"an objecting corporation"; but the defendant is to be regarded, for the purposes of the present question, as having participated in bringing on the appointment. Its answer admitted the allegations of the bill. Its consent is recited in the decree making the appointment. See Re Wm. S. Butler & Co., 207 Fed. 705, 708, 711, 125 C. C. A. 223.

In People v. Globe Ins. Co., to which reference has been made above, the receiver's appointment was in proceedings by the state to dissolve and wind up the defendant corporation, on whose part no participation appeared.

If the receivership, like bankruptcy, enables this employé to treat the contract as broken by the receivers' appointment and rely upon her right to damages sustained by the breach, as she does by her proof of claim, the only question is as to the provability of such a claim in proceedings like these.

Such a claim for damages may not be provable in bankruptcy, under the present act. Act July 1, 1898, c. 541, 30 Stat. 544. If not, the reason must be, not that it is unliquidated at the time of the bankruptcy, but that it is at that time contingent as to its existence or its amount. So far as it is unliquidated, it may be liquidated and proved in the proceedings, if the facts permit, as was done in Re Swift. But section 63 (Comp. St. 1913, § 9647) requires a claim, in order to be provable, to be a fixed liability absolutely owing on the date of the bankruptcy, even if it be one founded on an express contract. It is held that there is no provable claim for future rent, under a lease containing only the usual covenants and conditions as to rent, unexpired at the bankruptcy, though the bankrupt tenant is thereby disenabled from performance. The reasons are that the tenant's obligation to pay arises out of his right to occupy, and creates no debt before the time agreed for payment arrives, before which time he may be discharged from it in a variety of ways. Re Roth & Appel, 181 Fed. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270; Slocum v. Soliday, 183 Fed. 410, 411, 106 C. C. A. 56.

Following the analogy of the decisions regarding the liability for future rent under a lease, and upon similar grounds, the more recent bankruptcy decisions upon the question have been that the bankrupt's liability to an employé under an unexpired contract of employment not adopted by the trustee, is also too contingent in its nature to be proved under the present act. See Re Inman & Co., 171 Fed. 185 (N. D. Ga., 1909); Re American Vacuum Cleaner Co., 192 Fed. 939 (N. J., 1911); Re D. Levy, etc., Co., 208 Fed. 479 (Md., 1913).

Since bankruptcy is to result in discharging the bankrupt (if he has acted in good faith) from his provable liabilities, Congress may well think it right to limit the liabilities from which he may be thus released to those which are fixed at the time of bankruptcy, as it has done in the present act. Under a former act not thus limiting them, claims under unexpired contracts with him for personal services were regarded in this court as provable. Ex parte Pollard, 2 Lowell, 411, Fed. Cas. No. 11,252.

But for the purposes of a distribution to be made as the result of receivership proceedings in equity such as these, liabilities from which

the debtor may be discharged under the Bankruptcy Act are not the only liabilities to be considered. Claims, immature or contingent at the time of bankruptcy, if such that their worth or amount can be determined by recognized methods of computation, as of some date within the time limited for the presentation of claims by the court and without hindering expeditious administration, and if of a nature such as equitably entitle them to share in the distribution, are no less entitled to recognition, upon equitable principles, than are fixed liabilities absolutely owing at the institution of the proceedings. The Court of Appeals for the Second Circuit has, in Pennsylvania Steel Co. v. New York, etc., Co., 198 Fed. 721, 739, 740, 117 C. C. A. 503, after careful consideration of the questions involved, thus allowed damages for breach of an unexpired contract, whereby the railroad company in receivership had granted, for 20 years, the exclusive right of moving express matter over its lines, and agreed to furnish cars therefor, in consideration of a percentage of the gross earnings, to be proved against the fund for distribution. This decision, in the absence of any to the contrary in this circuit, is to be regarded as controlling so far as it applies.

In Ex parte Pollard, above referred to, Judge Lowell declined to regard such a claim as this as contingent. A different view upon this question appears to have been taken in the above-cited decisions under the present Bankruptcy Act. But that the amount of damages for the breach of such a contract is, at any rate, capable of being determined by recognized methods of computation, no doubt was entertained, and it is believed that there can be no such doubt. If there had been no receivership, but the Butler Company had discharged the employé without sufficient reason on the same day, there would have been no difficulty, in a suit by her for damages, as to their assessment. In this and in the similar cases below mentioned the agreed period of employment had not long to run. They all expire before any decree of distribution could be reached, and the ascertainment of damages involves comparatively little speculation regarding the future.

I must therefore agree with the master upon the question of law presented and approve the allowance made by him.

2. Agnes Murphy was employed by the Butler Company in August, 1912, under a written contract, as assistant buyer in its store, at $20 per week for one year from August 26, 1912. She was discharged by the receivers December 6, 1912, and the salary she would have received under her contract to August 26, 1913, less what she was able to earn meanwhile in other employment, amounts to $380, which the master has allowed. This allowance is approved, for the same reasons as in the case of the claim first considered above.

3. James A. Gagnon accepted employment by the Butler Company as buyer for its shoe department, offered him in a letter dated July 8, 1912, from its general manager, for two years, at $15,000, provided he did $1,000,000 business within that time; at $12,000, if the business he did failed to reach that amount. There were other terms and conditions, which need not be stated here. He began work under this agreement July 9, 1912. He was paid off and discharged by the re-

ceivers November 9, 1912. His agreed salary to July 9, 1914, a date subsequent to the filing of the master's report, though prior to the date of this decision, less what he earned or might have earned meanwhile in other employment, amounts to $6,736.12, which the master has allowed. The allowance is confirmed, for the same reasons as above; it not being suggested that anything has occurred since the report was filed which requires a change in the amount reported.

4. John N. Jowett was employed by the Butler Company for one year from July 1, 1912, at a salary of $10,000 per year, under a written contract, as buyer and manager of its wholesale millinery department. He began his employment July 1, 1912, and was discharged by the receivers eight days after their appointment on November 7, 1912. $3,168.51 is reported by the master as the difference between his salary under the contract to July 1, 1913, and what he earned under other employment meanwhile. For the same reasons as above, this allowance is also approved.

Decrees may be entered allowing the above claims for the respective amounts above stated.