## In re IMPERIAL BREWING CO.

(District Court, W. D. Missouri, W. D.   January 11, 1906.)

BANKRUPTCY—PROVABLE DEBTS—DAMAGES FOR ANTICIPATORY BREACH OF CONTRACT.

An adjudication of bankruptcy in an involuntary proceeding against a corporation is not of itself a repudiation by the bankrupt of an executory contract by which it agreed to take and pay for a certain quantity of a product to be grown and delivered by the seller in each of a number of future years, nor is it the equivalent of a permanent disenablement to perform the contract, so as to give the seller a present claim for damages for breach, which may be liquidated and proved as a debt of the estate, where the time for performance had not arrived and there had not in fact been any tender of performance on the one part nor refusal nor repudiation on the other.

In Bankruptcy. On application by the E. Clements Horst Company for an order directing the manner in which its claims for unliquidated damages against the bankrupt may be liquidated.

Warner, Dean, McLeod, Holden & Timmonds, for claimant.
Karnes, New & Krauthoff, for general creditors.
I. J. Ringolsky, for trustees.

PHILIPS, District Judge. On the 21st day of October, 1905, the Imperial Brewing Company, a corporation of the state of Missouri, was adjudged an involuntary bankrupt on petition of certain of its creditors and its answer admitting its inability to pay its debts and its willingness to be adjudged a bankrupt on that account. The E. Clements Horst Company, a corporation having its residence and general place of business in the city of San Francisco, Cal., has presented its petition, setting out in substance that on the 26th day of June, 1905, it entered into a contract with the said Imperial Brewing Company whereby the petitioner obligated itself to sell and deliver to said Imperial Brewing Company 80 bales of hops, each, of the crops of the years 1905 to 1910, inclusive, for which the said vendee company obligated itself to pay to the petitioner on each bale of such hops at the rate of 15 cents per pound (tare 5 pounds) net cash, plus the freight from the Pacific Coast. The time of delivery fixed by the contract was during the months of September to February, following the harvest of each year's crop. Said hops were to be used by said brewing company in the manufacture of beer. The petition alleges, in effect, that the contract was breached by said adjudication in bankruptcy, whereby the petitioner was damaged in the sum of $5,675, and it prays that the same may be liquidated and proved against the estate of the bankrupt, and for an order directing the manner in which said liquidation shall be had. The petition further alleges that the trustees in bankruptcy have elected not to keep said contract alive.

The question to be decided is, did the adjudication in bankruptcy against the Imperial Brewing Company in and of itself constitute such a breach of the contract as to mature the whole executory contract, entitling the claimant to prove up and have allowed against the estate in bankruptcy the damages claimed? While the statement of the petition is a little indefinite respecting the proceedings leading to the adjudication, the court will take cognizance of its own records, which show that it was an involuntary proceeding in bankruptcy— necessarily so because the corporation could not on its own voluntary petition be adjudged a bankrupt. While the petition herein states that the Imperial Brewing Company was permanently disabled from performing said contract and repudiated the same in all its parts, and that it retired permanently from business and was hopelessly insolvent, etc., these results are alleged to follow "by reason of said bankruptcy proceedings." At the time of the adjudication in bankruptcy there was no debt owing by the bankrupt to the claimant. There had been no delivery or tender of delivery prior thereto, and none since. It may be conceded as the law of this jurisdiction that where a party is bound from time to time, as expressed in the contract, to deliver articles to be manufactured or products to be grown, each parcel as delivered to be paid for at a certain time and in a cer-

tain way, a refusal by the vendee to be further bound by the terms of the contract or to accept further deliveries constitutes a breach of the contract as a whole, and gives the vendor a right of action to recover the damages he may sustain by reason of such refusal. In such case the positive refusal of the vendee to perform when tender is made, or notice by him to the vendor before maturity of the time for delivery that he will not carry out the contract, will release the vendor from making any tender, and entitle him to an action in advance of the fixed period for delivery on his part to recover damages as for breach of the whole contract. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953.

The sole reliance of the claimant to bring it within this rule for such breach is predicated of the adjudication in an involuntary proceeding in bankruptcy against the vendee. I am unable to consent to the proposition that such an adjudication in bankruptcy, ex vi termini, is in law tantamount to a refusal of the bankrupt to perform, or that it thereby permanently disabled itself from performance, to bring the claim asserted by petitioner within the operation of the rule laid down in Roehm v. Horst, supra. As said by Judge Sanborn, in Watson v. Merrill, 136 Fed. 363, 69 C. C. A. 719:

"An adjudication in bankruptcy does not dissolve or terminate contractual relations of the bankrupt. * * * Its effect is to transfer to the trustee all the property of the bankrupt except his executory contracts, and to vest in the trustee the option to assume or to renounce these. It is the assignment of the property of the bankrupt to the trustee by operation of law. It neither releases nor absolves the debtor from any of his contracts or obligations, but, like any other assignment of property by an obligor, leaves him bound by his agreements, and subject to the liabilities he has incurred. It is the discharge of the bankrupt alone, not his adjudication, that releases him from liability for provable debts in consideration of his surrender of his property, and its distribution among the creditors who hold them. Even the discharge fails to relieve him from claims against him that are not provable in bankruptcy, and, since his obligation to pay rents which are to accrue after the filing of the petition in bankruptcy may not be the basis of a provable claim, his liability for them is neither released nor affected by his adjudication in bankruptcy, or by his discharge from his provable debts. One agrees to pay monthly rents for the place of residence of his family or for his place of business, or to render personal services for monthly compensation for a term of years; he agrees to purchase or to convey property; and he then becomes insolvent and is adjudicated a bankrupt. His obligations and liabilities are neither terminated nor released by the adjudication."

Why should a rule be applied to a corporation—a legal entity—different in this respect from a natural person? Section 1, cl. 19, of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) declares that "persons" shall include corporations, except where otherwise specified. An adjudication in bankruptcy of a corporation does not work a dissolution of the corporation or a forfeiture or loss of its franchise. The very policy of the bankrupt law is that by the adjudication and the surrender to the trustee of all the assets of the bankrupt then owned he may thereby be manumitted from the burden of existing debts, and by his unimpeded energies and industry the better be enabled to prosecute his

business and earn a livelihood and a competency. Why should any different rule be applied to a corporation coerced into bankruptcy, which but represents the aggregate co-operation and capital of a number of individual stockholders? Its stockholders may decide to infuse new life into it by assessments or otherwise, and its directors resume business, go ahead, and perform any executory contract. And if they had an advantageous contract with the vendor for providing it with hops in its business, why should it not be left in position to avail itself of the yet unexecuted contract?

In Lovell v. St. Louis Life Insurance Company, 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423, the court held that where an insurance company had terminated its business and transferred its assets and policies to another company, whereby it totally abandoned the performance of its contracts by transferring all of its assets and obligations to the new company, it thereby authorized the insured to treat the contract as at an end and to sue to recover back the premiums already paid, although the time for performance of the obligation, to wit, the death of the insured, had not arrived. For, as said by Mr. Justice Bradley, referring to a life insurance company which had gone into liquidation, in Carr v. Hamilton, 129 U. S. 252, 256, 9 Sup. Ct. 295, 32 L. Ed. 669:

"By that act the company becomes civiliter mortuus, its business is brought to an absolute end, and the policy holders become creditors to an amount equal to the equitable value of their respective policies, and entitled to participate pro rata in its assets."

In Re Swift, 112 Fed. 315, 50 C. C. A. 264, a broker had made a contract to deliver certain stock to a customer. It was held that he made it impossible to fulfill his agreement to deliver the stock by his adjudication in bankruptcy, for the reason that it took the stock from him and vested it, with all his property, in his trustee. But that is clearly not this case.

As to In re Pettingill & Co. (D. C.) 137 Fed. 143, relied upon by the petitioner, I may say that I can concur in the syllabus of that case that under the bankrupt act the provability of a claim depends upon its status at the time of the filing of the petition in bankruptcy. If not then a provable debt, as defined in the act, it cannot be proved, although it may thereafter come within such definition. "If a bankrupt, at the time of bankruptcy, by disenabling himself from performing a particular contract, and by repudiating its obligation, could give the other party the right to maintain at once a suit in which damages could be assessed at law or in equity, then such party may prove as a creditor in bankruptcy, on the ground that bankruptcy is equivalent of disablement and repudiation."

If, however, it was intended to hold that, as applied to an executory contract for the sale of annual crops to be raised in successive years, where no breach had occurred at the time of an involuntary adjudication in bankruptcy, the mere act of such declared statutory insolvency constituted such a breach of the contract as to enable the vendor to prove up against the estate the contingent damages, as on a repudiation of the contract by the vendee, I cannot consent thereto.

There was no renunciation by the vendee company of the contract after the commencement of performance or renunciation before the time for performance had arrived. Nor has the vendee deliberately incapacitated itself or rendered performance of the contract impossible within the rule laid down in Roehm v. Horst, 178 U. S. 18, 20 Sup. Ct. 787, 44 L. Ed. 953. As a discharge in bankruptcy under section 1, cl. 12 means no more than "the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by the act," and the claim for damages for a possible future breach of a contract is not a debt provable against the estate, in the absence of any refusal on the part of the bankrupt to recognize the contract, and he has not voluntarily or positively disabled himself from performing it, where its performance does not become obligatory until after the adjudication in bankruptcy, my conclusion is that the claim in question is not one provable in bankruptcy.

It is a noteworthy fact that under the bankrupt acts of 1841 and 1867 the right was given to prove "uncertain and contingent demands" against the estate. This provision was omitted from the present bankrupt act of 1898. In my judgment this omission is significant.

It results that the application for an order directing the manner of the liquidation of the claim in question is denied.