### CURTIS v. WALPOLE TIRE & RUBBER CO.

(District Court, D. Massachusetts. August 7, 1914. On Motion to Dismiss Claim, July 7, 1915.)

#### No. 472.

1. CORPORATIONS ☞559—INSOLVENCY AND RECEIVERS—PROVABLE CLAIMS— DAMAGES FOR BREACH OF CONTRACT.

Where with its consent receivers were appointed for a corporation, who refused to adopt executory contracts made by the corporation for the purchase of merchandise, the receivership operated as a repudiation and anticipatory breach of the contracts, which entitles the other parties to prove their claims for damages for the breach against the receivership estate.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2241–2252, 2259; Dec. Dig. ☞559.]

2. CORPORATIONS ☞565—INSOLVENCY AND RECEIVERS—PROVABLE CLAIMS.

In the settlement of the estate of an insolvent corporation, the fact that a creditor relies on two separate contracts, which cover what is in substance the same debt, as upon an indorsement of a note and a later assumption of the note by the insolvent, does not entitle him to prove and receive dividends on both.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2281, 2282; Dec. Dig. ☞565.]

In Equity. Suit by Rensselaer L. Curtis against the Walpole Tire & Rubber Company. On receivers' motion to dismiss petition by Coal & Iron National Bank for allowance of claim, filed June 12, 1915. Motion sustained.

Robert C. Morris, of New York City, for plaintiff.

Lee M. Friedman, Percy A. Atherton, and Friedman & Atherton, all of Boston, Mass., for receivers.

Curtis G. Metzler, of Boston, Mass., for defendant.

Warren, Garfield, Whiteside & Lamson, of Boston, Mass., for Coal & Iron Nat. Bank.

Morris & Plante and Guthrie B. Plante, all of New York City, for claimants.

DODGE, Circuit Judge. These claims are dealt with in the fourth report, filed June 25, 1914, of the special master appointed by the order

entered in this case on January 9, 1914, to hear the parties and their evidence and report thereon to the court.

According to the report there was due from the Walpole Company on August 2, 1913, the date of the receivers' appointment, on open accounts and notes—to Meyer & Co., $8,077.88; to Brighton Mills, $510.25; and to Charles T. Wilson, $28,015.57. No exceptions have been taken to these findings, and no objections being now raised by the receivers, or by any of the parties, the claims of these three creditors are allowed in the amounts above stated.

[1] According to the report there was also due for breach of contract, from the Walpole Company, on the same date, to Meyer & Co., the further sum of $8,697.96, to Brighton Mills the further sum of $1,051.35, to Charles T. Wilson the further sum of $7,229.62, and to R. J. Caldwell Company, Incorporated, the sum of $1,700. Upon these findings the receivers object to the allowance of the above, or of any, amounts, contending that damages for breach of the contracts referred to are not allowable in these proceedings as matter of law.

The facts regarding the contracts in question are the same in the case of each of the four claimants above named, and are found by the master as follows:

"It appeared from the evidence that in each of the foregoing claims there was, at the time the receivers were appointed, an existing contract between the claimant and the Walpole Tire & Rubber Company. The contract was, in substance, that the Walpole Tire & Rubber Company would purchase from the claimant certain specified merchandise in definite quantities and at stated times, and at a price fixed by the contract. In each instance the contract was an executory one, in part at least, when the receivers were appointed.

"The receivers, in the exercise of their discretion, notified the claimants that they should decline to assume the contract, and in each case the claimant treated the contract as broken and has claimed damages for the breach."

In each of the above cases the creditor's contract was of such a character that if, in the absence of any receivership, the company had disenabled itself from performance and repudiated its own obligations under the contract on the day the receivers were appointed, the creditor might at once have maintained a suit against it wherein damages for the breach could have been assessed and recovered.

If there had been bankruptcy, therefore, instead of this receivership, the trustee not electing to adopt the contract, each of the above creditors would have had the right to treat the bankruptcy as the equivalent of disenablement and repudiation on the company's part—in other words, as an anticipatory breach of the contract of the company—and, having so treated it, to prove for his damages sustained by reason of it. Such is the rule now well settled and regularly applied in this circuit. In re Swift, 112 Fed. 315, 50 C. C. A. 264, decided by the Court of Appeals in 1901; In re Pettingill & Co., 137 Fed. 144, in this court (1905); Pratt v. Auto, etc., Co., 196 Fed. 495, 116 C. C. A. 261, in the Court of Appeals (1912).

It will not be contended that this is a case of the appointment of receivers of an objecting corporation, or that the appointment did not in fact prevent performance of the contracts here in question. It therefore affected the contracts (the receivers not adopting them) just as the

company's bankruptcy would have affected them; in other words, it was the equivalent of repudiation or disenablement on the company's part. Pennsylvania, etc., Co. v. New York, etc., Co., 198 Fed. 721, 743, 117 C. C. A. 503. The case is not one in which it can be said, as in Malcomson v. Wappoo Mills (C. C.) 88 Fed. 680, or In re Inman, etc., Co., 175 Fed. 312, that the prevention of performance was the act of the law, not of the insolvent or bankrupt. Both these decisions were based upon People v. Globe Ins. Co., 91 N. Y. 174, in which the receiver's appointment was at the instance of the state and for the purpose of dissolving the corporation and winding up its affairs.

The master. was therefore right, upon the facts found by him, in allowing the above claims for damages for breach of the contracts in question. It is understood that in each case the creditor had the specific merchandise contracted for and was ready to deliver it.

It is urged on behalf of the receivers that the damage claims allowed are such in character that they ought not, in equity, to be allowed to share in the assets until the general creditors are fully paid. Wells v. Hartford Manilla Co., 76 Conn. 27, 55 Atl. 599, is the authority mainly relied on. In that case, as here, the vendor had the undelivered merchandise ready to deliver at the time of the receiver's appointment, but the receiver declined to take it. An alleged repudiation by the insolvent company just before its receivership was found by the court not to have constituted a breach of the contract. Treating it as broken by the receiver's refusal to adopt, the court was of opinion that the receiver had the privilege to elect whether to adopt it or not, "without at least subjecting the fund required for the satisfaction of existing claims of creditors to a charge for damages." 76 Conn. 39, 55 Atl. 603. The claim was therefore treated as accruing subsequently to the receiver's appointment, and as one which, being for "profits which the future, by reason of a good bargain, might have in store," should be postponed to claims existing when the appointment was made. 76 Conn. 41, 55 Atl. 604.

But if I am right in holding that these creditors were entitled to treat the appointment of the receivers as in itself a breach of their contracts, for the reasons above given, it follows that their claims for damages came into existence simultaneously with the appointment and are to be regarded as then existing. That the receivers might nevertheless have required performance and taken the goods is immaterial, after their failure to exercise the right. If the creditors had provided themselves with the goods in reliance upon their contracts, there is nothing in the facts found which shows that their loss by reason of the company's failure to take and pay for them was merely the loss of a speculative profit. Damages to them occasioned by the loss of their contracts, so far as ascertainable by recognized methods of computation, are allowable claims in such proceedings as these, and in damages so ascertainable are included gains prevented, when fairly shown. Penna., etc., Co. v. New York, etc., Co., 198 Fed. 721, 739, 740, 117 C. C. A. 503. The difference between the contract price and the market price, as fixed by a sale in consequence of the purchaser's refusal to receive, is recognized as the proper measure of damages in cases such as this. Kingman v.

Western Mfg. Co., 92 Fed. 486, 490, 34 C. C. A. 489; River, etc., Co., v. Atlantic Mills (C. C.) 155 Fed. 466, 473. I am unable to find any sufficient ground for denying to a claim for such damages, so ascertained, equal rank, for the purposes of the distribution to be made, with other allowable claims not entitled to priority.

The total allowances made by the special master are therefore approved and confirmed, including the amounts allowed as due for breach of contract, viz.:

John H. Meyer & Co..................................................$16,755 64
Brighton Mills...................................................... 1,561 60
Charles T. Wilson................................................... 35,245 19
R. J. Caldwell, Incorporated........................................ 1,700 00

### On Motion to Dismiss Claim of Coal & Iron National Bank.

[2] Under the order for proof of creditors' claims herein, entered August 23, 1913, whereby claims presented were required to be made up as of August 2, 1913, the date of the filing of the original bill in the case, this bank presented a proof of claim, sworn to September 21, 1914, the allegations whereof were in substance:

That the defendant (hereinafter called Walpole Company) was indebted to the bank in the sum of $6,189.25.

That the consideration of the debt was a promissory note, dated May 3, 1913, for $7,500, with interest at 6 per cent. signed by the Massachusetts Chemical Company and indorsed by the Walpole Company.

That the amount due thereon August 2, 1913, less payments on account, was $6,189.25.

That the Walpole Company was liable to the bank, both by reason of its indorsement of said note, and in addition thereto "by reason of the assumption by said Walpole Company of the liabilities of said Massachusetts Chemical Company."

That the bank did not waive, but expressly reserved, all rights it might have to object to or avoid the transfer of the assets of said Chemical Company to the Walpole Company as a transfer in fraud of creditors.

The note referred to was annexed to the proof of claim. It was payable on demand. It bore the indorsement of the Walpole Company, by A. T. Baldwin, its then treasurer, and of A. T. Baldwin. It was a collateral note, but no question relating to the collateral deposited has been raised. A notary's certificate attached shows that the note was protested for nonpayment August 13, 1914, and due notice given the maker and indorsers on the same date.

The claim thus presented, being disputed, was referred to the special master. His report, filed October 24, 1914, sets forth an agreement by the parties before him that "a proof against the maker of the note may be allowed in the sum of $6,189.25," and that "the claim by reason of the indorsement of the note, if any, is suspended without prejudice"; also that "the amount of dividends paid on the claim is to be a payment pro tanto against the judgment recovered in the superior court for Norfolk county in the suit of said bank against the Massachusetts Chemical Company." The master reported this stipulation with his approval. After due hearing on his report, the court entered an order October 24, 1914, confirming and approving it, and allowing the claim for the sum of $6,189.25.

The present petition, filed June 12, 1915, recites the filing of the above claim, refers to the above order of October 24, 1914, and alleges that, "unless said suspended claim is taken up for determination," it is possible that the bank will receive in dividends less than $6,189.25, and that the claim against the indorser of the note should be allowed to the extent necessary for the bank to receive in dividends the full amount of its claim. Revocation of the decree suspending said claim against the indorser on the note is asked, and allowance of said claim so far as necessary to enable the bank to receive in dividends the full amount of its claim of $6,189.25.

The receivers moved on June 14, 1915, to dismiss the petition, on the ground that nothing set forth therein entitles the bank to the relief asked, or to any additional proof of claim.

It was stipulated at the hearing on the motion that on June 2, 1913, the Walpole Company "took over all the assets" and "assumed the liabilities" of the Massachusetts Chemical Company. This stipulation was made without prejudice to the rights of this bank, or the creditors' committee, "to contend that said transfer was illegal."

Whatever rights may have been reserved by the bank or by any creditor of the Chemical Company to attack the validity of the transfer here referred to, there has been no application to this court to separate or withdraw the assets then transferred, or the proceeds thereof, from the fund held by the receivers in this case and being administered in these proceedings. The transfer, as has appeared, had been made two months before the bill in this case was filed, and was made upon the simultaneous assumption by the Walpole Company of all the Chemical Company's liabilities. The receivers took and have retained control of all the transferred assets in the Walpole Company's hands on August 2, 1913, together with all its other assets. All these assets have since been treated, without distinction, as subject to the decree then made and to all orders and decrees subsequently made in these proceedings. Creditors, whether of the one or of the other concern, have alike presented their claims under the order of August 23, 1913, and all such claims appearing to have been due by either concern on August 2, 1913, have been allowed as debts of the Walpole Company, entitled to share in any distribution of the total fund under administration.

Among the claims thus presented by creditors of the Chemical Company was the claim of this bank upon this note, allowed as above on October 24, 1914, for the total amount due August 2, 1913, from the maker. The claim can therefore stand no differently, for the purposes of the present question, than if the Walpole Company had been itself the maker of the note. The bank must be regarded as accepting the Walpole Company's assumption of the original maker's liability as valid; otherwise, it cannot justly be admitted to share, in virtue of that liability, in assets which, if distributed, are to be distributed as assets of that concern only, and among those only who are entitled to rank as its creditors. Should the bank (as it has not heretofore done) take any steps in these proceedings looking toward a separate disposal or administration of assets taken over from the Chemical Com-

pany on June 2, 1913, for the separate benefit of creditors of that concern, reconsideration and disallowance of its claim allowed October 24, 1914, might become necessary. No ground appears, and none has been suggested, for supposing that the Walpole Company's assumption of the Chemical Company's liabilities on June 2, 1913, has made those liabilities its liabilities, independently of the concomitant transfer to it of the latter concern's assets.

The judgment obtained in the state court by the bank against the Chemical Company, referred to in the above quotation from the special master's report, and an alleged attachment of the Chemical Company's property in that suit, are considered in an opinion this day filed relating to another petition herein by the bank. Further reference to them is unnecessary for the purposes of the present question.

If the assets in the receivers' hands are subject as above, in the bank's favor, to the liability of the Walpole Company in place of the original maker, for what was due on the note August 2, 1913, the necessary conclusion in view of all the above is, in my opinion, that the same assets are not also subject to a further liability for what was so due on the note by reason of the Walpole Company's indorsement thereof. To allow such a further claim against them would be to permit the bank to get two dividends in respect of what is in substance the same debt. In the settlement of insolvent estates, the fact that a creditor relies on two separate contracts does not entitle him to an advantage of this kind over other creditors. Lowell, Bankruptcy, § 201; Remington, Bankruptcy (2d Ed.) §§ 753, 1520. First Nat. Bank v. Eason, 149 Fed. 204, 79 C. C. A. 162; Hitner v. Diamond, etc., Co. (C. C.) 176 Fed. 384, 399, 400.

The bank, therefore, having obtained allowance of its claim for the full amount due it on the note against the Walpole Company's assets, including those which came to it by virtue of the transaction on June 2, 1913, from the Massachusetts Chemical Company, has no right to the allowance also of its so-called "suspended" claim against the same assets, and its petition must be dismissed.