### SAMUELS v. E. F. DREW & CO., Inc.

### In re EL DORADO OIL WORKS et al.

(Circuit Court of Appeals, Second Circuit. July 10, 1923.)

No. 235.

1. Receivers ⬤149—"Provable claim" must have been in existence at time of appointment of receiver.

To constitute a "provable claim" against assets administered by the court through receivership proceedings, it must be in existence at the time of the appointment of the receiver.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Provable Claim.]

2. Receivers ⬤149—Amount of claim against fund is its value at time of appointment of receiver.

The participation by a creditor in the fund administered in receivership proceedings is determined by the value of the claim when the fund is created, and that is the date of the appointment of the receiver.

3. Receivers ⬤151—Measure of damages for breach of contract of sale.

Where an executory contract for sale of a commodity is terminated by appointment of receivers for the purchaser, the measure of damages provable by the seller against the receivership fund is the difference between the contract price and the price at which he could have sold the commodity at the time the receivers were appointed, for delivery when required by the contract, and this rule applies, not only to commodities dealt in on exchanges, where futures are bought and sold, but to all standard commodities customarily sold for future delivery.

4. Receivers ⬤90—Not required to formally renounce executory contract.

A receiver is under no obligation to renounce an executory contract, but there is a presumption that he will not adopt it, and if he formally rejects it the rejection relates back to the date of his appointment, which is the date of breach.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Sumner L. Samuels against E. F. Drew & Co., Inc. In the matter of the claim of the El Dorado Oil Works against the receivers. From an order allowing its claim in part at $2,890.43, claimant appeals. Affirmed.

For opinion below, see 286 Fed. 278.

Chadbourne, Hunt & Jaeckel, of New York City (William M. Chadbourne and Cyrus F. Smythe, both of New York City, of counsel), for appellant.

Lowenthal & Szold, of New York City (Maxwell Brandwene, of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The plaintiff filed this bill in equity for the appointment of a receiver to conserve the assets of the defendant, alleging its inability to meet its obligations. Receivers were appointed, and the El Dorado Oil Works filed a claim for the breaches of three contracts. The claim was allowed for $2,890.43, a much-reduced sum than the amount of the claim as originally filed. The El Dorado Oil Works, feeling aggrieved, appeals. The defendant made three contracts, to be performed in California, for the purchase from the appellant of snowflake cocoanut oil. The contracts were dated in July, 1920, and called for deliveries of specified quantities of oil in October, November and December, 1920. Before the November and December, 1920, deliveries were made, the receivers were appointed (on October 30, 1920). The appellant was notified by telegrams on November 9th, 10th, and 11th that the receivers had disaffirmed the contract; that they could not handle the oil contracted for. There was a decline in the market price of this oil subsequent to the appointment of the receivers.

On January 13, 1920, an order was entered, requiring all claimants against the defendant to file their claims before April 1, 1921. Appellant filed its claim for $42,692.73, basing the same upon the breaches referred to. A petition was filed requesting that the appellant's claim be allowed, and an answer was filed, alleging that the contracts were not adopted by the receivers, and that the appellant was fully aware of the intention of the receivers not to adopt the same. It was further alleged that the measure of damages due to the breach, which it was claimed occurred when the receivers were appointed, was the difference between the contract price and the market price of the cocoanut oil on the date of appointment. This, we hold, was the date when the performance of the contract was breached. The appellant seeks, on this appeal, as it did below, to recover the difference between the contract and market price of cocoanut oil on the date when performance was due by the defendant under the original contracts; that is, the dates of deliveries. But the receivership intervened before the dates of deliveries. The court below fixed the damages as the difference between the contract price and the market price on October 30, 1920, of goods of like grade, brand, and quality, and for deliveries as specified in the contracts. By the stipulation, it was agreed:

"That the difference, on October 30, 1920, between the contract price (12⅞ cents) and the market price (12½ cents) of oil of the grade, brand, and quality specified in said contracts, Exhibits B and C, for delivery at the time and place specified therein, was three-eighths (⅜) cents per pound."

[1] And it must further be conceded that the appellant could have sold to others the same oil on that day at prices equivalent to or negligibly less than the contract price. To constitute a provable claim against assets administered by the court through receivership proceedings, it must be in existence at the time of the appointment of the re-

ceiver. Merrill v. National Bank, etc., 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640; Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611; Penn. Steel Co. v. N. Y. City Ry. Co., 198 Fed. 721, 117 C. C. A. 503. The reason for this is, when a court of equity appoints receivers for an insolvent estate, it takes control of the assets and property of the estate for the benefit of all existing creditors. A fund is thus created to be administered for all creditors, and to be charged with the obligations in favor of all existing creditors. The court seeks to preserve the assets and property indicated so no loss may occur or be sustained by existing creditors. The court does not do this for the protection of prospective creditors. The rights of existing creditors must be in esse and established at the time when the fund is created.

[2] The participation in the fund by creditors is determined by the value of the claim at the time when the fund is created, and that is the date of the appointment of the receivers. These principles were enunciated in Merrill v. National Bank, etc., 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640. A distinction exists between the right in personam and the right in rem in receivership proceedings. These proceedings shifted the creditors' remedy to the interest in the assets or in rem. Its rights in the fund were established when the fund was created. Collection subsequently made or audited, or payments made therefrom, cannot operate to change the relations of the creditor and his cocreditors in respect to their rights in the fund. The rule applicable here is well expressed in In re Swift, 112 Fed. 315, 50 C. C. A. 264, and Hynes v. Illinois Trust & Sav. Bank, 226 Ill. 95, 80 N. E. 753, 10 L. R. A. (N. S.) 472. Illustrating the effect of this rule, it has been held that no interest is allowed generally to unsecured claimants after the appointment of the receiver, even though one creditor may have lent the insolvent estate, prior to the application for the receiver, moneys with interest at 4, 5, or 6 per cent. per annum. Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663; Amer. Iron & Steel Mfg. Co. v. Seaboard Air Line, 233 U. S. 261, 34 Sup. Ct. 502, 58 L. Ed. 949; Amer. Engineering Co. v. Met. By-Products Co. (C. C. A.) 267 Fed. 290.

The rule underlying these cases is that no interest is calculated on claims from the date of the application for the receivers. It has been held in insurance companies in solvency cases, where the loss is sustained after the receivership, that claimants are allowed to prove only to the extent of the premiums actually paid in, even though the death or accident occurred subsequent to the application for receivers, but prior to the distribution of the assets on the day when all claims must be filed. People v. Commercial Alliance Life Ins. Co., 154 N. Y. 95, 47 N. E. 968; Doane v. Millville Mutual Marine & Fire Ins. Co., 43 N. J. Eq. 522, 11 Atl. 739. A claim that is contingent on the date of the appointment of the receivers is provable, but it must be definite and certain in amount on or before the last date fixed by the court for filing claims. But, to participate in the fund, a creditor must be able to state that his claim is of a definite and certain amount. Penn. Steel Co. v. N. Y. City Ry. Co., 198 Fed. 721, 117 C. C. A. 503. A con-

tingent claim must be in existence on the date of the appointment of the receivers, and it cannot participate in the distribution of the fund in an amount in excess of the maximum value of the claim on the date when the fund was created.

We are referred to the cases of Filene's Sons Co. v. Weed, 245 U. S. 597, 38 Sup. Ct. 211, 62 L. Ed. 497, and Gardiner v. Butler, 245 U. S. 603, 38 Sup. Ct. 214, 62 L. Ed. 505, as authority opposed to these principles. The first case involved a claim for rent. The lessee corporation, not only undertook to pay as rental all sums payable by its lessor under subleases of the same premises, but also as an inducing consideration for the lease covenanted to pay at all events a certain amount per annum in monthly installments throughout the term. If the lease should be terminated sooner, to pay a sum measured at the same rate for the unexpired portion less a discount. It was held that this covenant created a present indebtedness, independent of the rent, for the whole amount so stipulated to be paid, and it was held that upon the appointment of the receivers in an equity proceeding to carry on the lessee's business and to pay its debts, upon the receiver declining the lease, leaving rent in default, and where the lessor re-entered pursuant to the lease with the court's consent, it might perfect its claim to the amount payable under the covenant for the unexpired term, and that the claim, as thus perfected, is provable within the time fixed by the court for the proof or claims against the receivers. It was held, further, that the clause for damages was not a covenant to pay or accelerate rent, but a personal covenant liquidating damages on a fair footing. The Gardiner Case was also a receivership proceeding, and it was held that the lessor, who re-entered during the receivership, had a proper claim for rent up to re-entry, and for damages based upon the lessee covenanting to pay the difference between the rental value at the time of re-entry and the rent, and other payments reserved for the balance of the term. There the receivers occupied the premises, and assumed, for a short period of time, the lease after their appointment, and they were held not to deprive the claimant of the ordinary right to prove a claim against the insolvent estate for the breach of the lease caused by the appointment of the receivers.

The cases are not in conflict with the rule we apply here. In many cases, when the receivers are appointed, the insolvents have executory contracts, as were the contracts here in question. In such case, the question is always presented to the receivers whether or not to adopt those contracts which are not clearly advantageous to the estate. Since in equity receiverships an insolvent defendant is prevented by court order from carrying out the contracts of the defendants, the courts are confronted with the problem of whether the solvent contracting party shall have a right to participate in the distribution of the fund, or whether his sole right should be the ordinary right in personam against the insolvent defendant.

In bankruptcy cases, some courts denied the right to the solvent party to prove any claim against the bankrupt estate, because there was no breach of contract at any time prior to the petition, and no legal injury sustained by the claimant at any time prior thereto, and it was

292 F.—47

argued that there was no claim in existence at the time of the filing of the petition. In re Imperial Brewing Co. (D. C.) 143 Fed. 579; In re Inman & Co. (D. C.) 171 Fed. 185. Other courts held that the claimants had a property right prior to bankruptcy, which was destroyed by the mandate of the court preventing the bankrupt from performing the contract, and that the claimant should be allowed to prove his claim against the bankrupt's estate as of the date of the filing of the petition. In re Swift, 112 Fed. 315, 50 C. C. A. 264; In re Stern, 116 Fed. 604, 54 C. C. A. 60; In re Neff, 157 Fed. 57, 84 C. C. A. 561, 28 L. R. A. (N. S.) 349. When the question was presented to the Supreme Court, it was held that, where a party bound by an executory contract repudiates his obligation or disables himself from performance, the promisee has the option to treat the contract as ended, and may maintain an action at once for damages occasioned by the anticipatory breach. The intervention of bankruptcy was held, under the circumstances, to constitute such a breach, notwithstanding the breach was involuntary, and that the claim of the promisee is one founded upon a contract, and provable as liquidated damages. Central Trust Co. v. Chicago Auditorium Ass'n, 240 U. S. 581, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580.

If it is impossible legally for the defendant to perform the obligations under the contract, there can be no recovery of profits. In such cases the claimant, who seeks to recover damages from an insolvent estate, can recover actual loss sustained by him either in part performance or in preparation for the performance of his contract obligations. the right of an executory contract claimant is a contingent right, and in proving his claim he may prove only his actual loss. The damage caused by the breach is the damage caused by the destruction of the right of property, and is measured by the value of the property destroyed. That destruction takes place on the date of the breach, and hence the plaintiff has a cause of action immediately on the date of the breach. Such anticipatory breach takes effect as a premature destruction of the contract, and the injured party is entitled to compensation to the extent of the value of the contract at the time of its destruction be that value greater or less than it would have been on the date of the performance. This follows the rule that damages are to be compensatory, and not punitive.

[3] The law seeks to give to the injured person the value of the contract of which he has been deprived, no more and no less, and the question here is: What was that contract right worth on October 30, 1920? And the answer is that such sum is to be determined by taking the difference between the contract and market prices on the date of the breach for the same quality of goods, not for immediate delivery, but for delivery at the time and place specified in the contract. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. When it is established that on the date of the breach the claimant could have entered into similar contracts for similar deliveries, the only damages to which he is entitled are represented by the difference between the contract price and the price at which he could have secured such contracts. This rule does not apply solely to commodities which are sub-

ject to systematic dealing in futures, and which have market quotations respecting deliveries on specific future dates, as contended for by the appellant. In the Horst Case, cited, hops were held to be a standard commodity. Cocoanut oil is no less a standard commodity. The rule is applicable, not only to commodities dealt in on the exchange where futures are bought and sold, but extend to all standard commodities having a market for future deliveries. The appellant substantially admits that contracts are frequently made for the sale of cocoanut oil for future delivery. This was the case here. The appellant admits it deals in the sale of cocoanut oil by contracting for future deliveries.

[4] The receiver is under no obligation to renounce an executory contract. The contract is terminated, even though the receiver never renounces. Menke v. Willcox (D. C.) 275 Fed. 57; Kansas City R. R. Co. v. Lusk, 224 Fed. 704, 140 C. C. A. 244; Peabody Coal Co. v. Nixon, 226 Fed. 20, 140 C. C. A. 446. There is a presumption that the receiver will not adopt a contract. If he does, it is a voluntary act of his own, to be performed with promptness; but, if he formally rejects such executory contract, the rejection dates back to the date of breach occasioned by the receiver's appointment. In such cases there is need for mitigation of damages, which is more striking than in the ordinary case. If the claimant elected to treat the contract as at an end, he should act promptly; if he so desires, he may keep the contract open until the date of performance and then sue. He would be barred from proving a claim against the estate, inasmuch as the theory of allowing the proof of claims for breach of executory contracts against an insolvent estate necessarily presupposes that the contract has been broken by reason of the appointment of the receiver and cannot be kept open at the election of a claimant. An executory contract claimant is entitled as damages only to the difference between the contract and the market value on the date of the breach of similar commodities for similar deliveries. Pennsylvania Steel Co. v. N. Y. City Railway Co., 198 Fed. 721, 117 C. C. A. 503. In the case of sale of commodities in which there are extensive dealings for future deliveries, the solvent party can press the receiver to announce his decision very quickly, and, if need be, with the assistance of the court; and, if the receiver either refuses to give his decision or renounces, then the solvent party may be free to treat the contract as broken.

We find no error in the result below. Decree affirmed.